NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAID EL FADLY,<br><br>                Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY<br><br>                Defendant. | Civil Action No.: 13-cv-03164 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

Raid El Fadly ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This motion has been decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the decision of the Administrative Law Judge (the "ALJ") is affirmed.

**II.    BACKGROUND**

    **A.    Procedural History**

Plaintiff applied for disability insurance benefits under Title II ("DIB") and supplemental

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

security income under Title XVI ("SSI," collectively "Benefits") from the Social Security Administration ("SSA") on February 4, 2010. (R. 165-75.) Plaintiff alleged disability beginning on December 7, 2008. (R. 165, 172.) Plaintiff's claim was denied initially on August 26, 2010. (R. 92-96.), and Plaintiff requested an administrative hearing on October 5, 2010. (R. 97.) The ALJ held a hearing in this matter on August 19, 2011 (R. 33-64), and a supplemental hearing on February 1, 2012 (R. 65-80.) In a written opinion dated March 5, 2012, the ALJ determined Plaintiff was not disabled. (R. 22-28.) The Appeals Council denied review on March 19, 2012, rendering the ALJ's decision the final judgment of Defendant. (R. 5-9.) Plaintiff timely filed this action.

### B. Personal and Employment Background

Plaintiff was 44 years old at the onset of his alleged disability. (R. 165-66.) Plaintiff was employed as a taxi driver and dispatcher in North Bergen, NJ from 1999 to 2009. (R.39-40; 231.)[2] In his application for disability dated February 4, 2010, Plaintiff claimed that he did not work from 1992 to 2000. (R. 166.) Plaintiff is college educated. (R. 191.)

The Vocational Expert at Plaintiff's hearing before the ALJ characterized Plaintiff's past taxi driving as medium work, and his past taxi dispatching as sedentary. (R. 55.)

### C. Medical Background

Plaintiff claims he suffers from depression, brittle diabetes impairment, hypertensive

---

[2] Though Plaintiff originally claimed disability starting on December 7, 2008 (R. 231), this date is contradicted by the Record and Plaintiff's testimony, which provides that Plaintiff continued to work in 2009. (R. 39-40; 177.) This was pointed out at the oral hearing, but not amended in the ALJ's final decision. (R. 40.) Since the ALJ ultimately found Plaintiff not disabled, this Court finds any potential error in the onset date harmless. See Ritchey v. Astrue, No. 09-139J, 2010 WL 3824236, at *2 (W.D. Pa. Sept. 21, 2010).

cardiovascular disease, anxiety, and coronary artery disease. (Pl. Compl. 1.) Plaintiff testified that he feels pain in his chest upon minimal exertion, such as walking up stairs or beyond a few blocks. (R. 41.) He experiences shortness of breath and occasional sweating. (Id.) Plaintiff alleges that he sometimes experiences pain even while at rest and is occasionally unable to answer his phone. (R. 42-43.) Plaintiff testified that he is mostly confined to his home, sometimes remaining inside for four or five straight days. (R. 49.) Plaintiff testified that he does his laundry and goes shopping, but sometimes feels pain when attempting other household chores. (R. 49-50.) Plaintiff stated that he drinks alcohol, in limited amounts, once every ten or fifteen days, but ceased heavy drinking over a year ago. (R. 51-52.)

Plaintiff originally alleged that he became disabled and unable to work on or about December 7, 2008. (Pl. Compl. 1.) Plaintiff was treated for chest pain in the emergency room at Jersey City Medical Center on December 3, 2008. (R. 392.) He returned to the hospital with similar symptoms on December 7, 2008. (R. 323.) Doctors determined that Plaintiff was experiencing systolic heart failure and gave Plaintiff a left heart catheterization. (Id.) After the procedure, Plaintiff was diagnosed with cardiomyopathy, most likely alcohol related. (R. 350.) At this time Plaintiff had an ejection fraction[3] of 25% and was advised to cease consumption of alcohol. (R. 383.) Plaintiff last visited Jersey City Medical Center on January 3, 2009 with chest and left side pain, after consuming alcohol. (R. 253.) Plaintiff underwent testing at Cardio-Med Services, LLC in late January and early February 2009. (R. 564-82.) Plaintiff was diagnosed with an ejection fraction of 39%. (R. 582.)

---

[3] Ejection fraction is a measurement of how much blood is moving through a heart's ventricles. Plaintiff's brief states that ejection fraction averages 60-70% in healthy hearts. (Pl. Br. 3, n.6.)

3

Plaintiff was treated for chest pain at White Memorial Medical Center on April 24, 2009. (R. 476.) Plaintiff received his second catheterization and was diagnosed with coronary artery disease and cardiomyopathy, with an ejectment fraction of 20%. (R. 482.) Plaintiff was scheduled to receive an implantable cardioverter-defibrillator (ICD), but refused the procedure against doctors' advice. (R. 478.)

On June 28, 2009 Plaintiff was admitted to Scripps Mercy Hospital upon feeling chest pressure. (R. 501.) An ICD was implanted in the Plaintiff's chest and he was discharged with an ejection fraction of 30-35%. (Id.) Plaintiff's ejection fraction improved significantly over the next few months. (R. 487.) The symptoms of Plaintiff's heart failure improved from Class III to II[4] following implantation of the ICD. (R. 490.)

Plaintiff's ICD was reprogrammed at Scripps in December of 2009, in response to chest pain and occasional diaphragmatic stimulation. (R. 487-88.) This reprogramming turned off the leads to Plaintiff's left ventricle and minimized pacing in the right. (R. 490.) Doctors programed Plaintiff's ICD to only function as a defibrillator (Id.); additionally it had served as a pacemaker (R. 503-04.) In February 2010, Plaintiff's ejection fraction measured 65%. (R. 543.)

On July 6, 2010 Dr. Rocely Ella Tamayo examined the Plaintiff and his medical records at the request of the Defendant. (R. 592-98.) Dr. Tamayo diagnosed Plaintiff with diabetes mellitus, hypertension, tenderness from his defibrillator, nicotine abuse and a history of coronary artery disease. (R. 597.) In her functional analysis, Dr. Tamayo determined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, albeit with limitations to his

---

[4] According to Plaintiff, the New York Heart Association defines functional classifications of heart failure. Class III typically creates marked limitation to physical activity, while Class II results in only slight limitations. (Pl. Br. 6, n.20.)

4

left arm. (Id.) She reported that Plaintiff could sit unrestricted and stand or walk for 6 hours of an 8-hour workday. (Id.)

Dr. Ashraf Elamashat performed a psychiatric evaluation of Plaintiff on August 13, 2010. (R. 600-05.) Dr. Elamashat diagnosed Plaintiff with an unspecified depressive disorder and alcohol dependence in remission. (R. 604.) He assigned Plaintiff a Global Assessment of Functioning (GAF) score of 60. (Id.) Dr. Elamashat opined that Plaintiff was able to "adapt to the stresses common to a normal work environment" and "perform work activities without special or additional supervision." (R. 605.) He also reported that Plaintiff could understand and perform detailed instructions, interact with others and maintain concentration. (R. 604-05.)

Medical/psychological consultant Dr. Tashjian evaluated Plaintiff's mental impairment on a form mirroring the standards set forth in 20 C.F.R. §§ 404.1520a and 416.920a. (R. 614). Dr. Tashjian reported that Plaintiff had a medically determinable, but non-severe, mental impairment. (R. 606.)

Cardiologist Dr. Anthony Inguaggiato began treating Plaintiff in June or July of 2010. (Compare R. 702 (July 22, 2010 listed as "1st Exam"), with R. 705 (June 29, 2010 listed as date of first treatment)). In an examination on July 29, 2010, Dr. Inguaggiato diagnosed Plaintiff with congestive heart failure, diabetes mellitus and degenerative joint disease. (R. 702.) He reported that Plaintiff could not work because of his heart condition and that this disability would continue for twelve months or more. (R. 703.)

On June 24, 2011 Dr. Inguaggiato completed a cardiac impairment questionnaire. (R. 705-10.) He diagnosed Plaintiff with Class "II/III" congestive heart failure with an ejection fraction of 25%. (R. 705.) The doctor reported that Plaintiff showed signs of depression and anxiety related to his chest pain. Dr. Inguaggiato estimated that Plaintiff could sit for 5 or 6 hours

a day, but could not stand or walk for over an hour, nor lift or carry any weight. (R. 707-08.) He opined that Plaintiff's pain was a constant interference with his ability to concentrate and that Plaintiff was incapable of low stress work. (R. 708.)

Dr. Inguaggiato reiterated this prognosis in his Examining Physician's Report, dated August 2, 2011, in which he opined that the Plaintiff was currently unable to work part-time and would never be able to return to full-time employment. (R. 720.) On this exam, Dr. Inguaggiato indicated Plaintiff had Class II heart failure. (R. 717.) Dr. Inguaggiato measured Plaintiff's ejection fraction at "~30%" on August 8, 2011. (R. 721.) On January 23, 2012, Dr. Inguaggiato signed a letter stating that Plaintiff was totally disabled and that drug and/or alcohol abuse was not a material cause of the disability. (R. 731.)

## III.     LEGAL STANDARDS

### A.     Standard of Review

This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). Courts are not "permitted to re-weigh the evidence or impose their own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does

not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F.App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

### B.    Determining Disability

Pursuant to the Social Security Act, to receive DIB, a claimant must satisfy the insured status requirements of 42 U.S.C. § 423(c). In order to be eligible for Benefits, a claimant must show that she is disabled by demonstrating that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the claimant's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B). Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or

mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the claimant has a severe impairment that limits her ability to work. Id. Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work. Id. Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform. Id.

The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 262 n.2.

**IV.   DISCUSSION**

    **A.   The ALJ's Determination That Plaintiff's Mental Impairments Are Non-Severe Is Supported By Substantial Evidence**

In step two of the SSA's disability analysis the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that are "severe." Sykes, 228 F.3d at 262; 20 C.F.R. §§ 404.1520, 416.920. An impairment (or combination thereof) is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921; Newell v. Comm'r Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).

The ALJ ruled that Plaintiff's only "severe" impairment under the Regulations was coronary artery disease. (R. 24.) The ALJ determined that Plaintiff's other claimed impairments: hypertension, diabetes, sleep apnea, history of resolved alcoholic cardiomyopathy, and depressive disorder, were non-severe. (R. 25.)

Plaintiff contends that the ALJ erred in finding his mental impairments non-severe. (Pl. Br. 14-16.) The Court disagrees. The ALJ's mental impairment determination is supported by substantial evidence. In reaching his conclusion, the ALJ relied upon the report of Dr. Elamashat, and Dr. Tashjian's psychiatric review. (R. 25.) Although Dr. Elamashat diagnosed Plaintiff with depressive disorder, he found no functional limitations. (R. 604-05.) Similarly, Dr. Tashjian's review of Plaintiff's file indicated that Plaintiff's limitations were not severe.

In an attempt to overcome these findings, Plaintiff contends that the ALJ should have credited Dr. Inguaggiato's Cardiac Impairment Questionnaire of June 24, 2011 and Dr. Gerber's oral testimony as evidence that Plaintiff's mental impairment was severe. (Pl. Br. 15-16.) The ALJ's decision to the contrary is supported by the Record.

First, the ALJ correctly noted that Dr. Inguaggiato's functional assessment that Plaintiff was unable to work did not indicate "longitudinal mental health treatment." (R. 25-27.) Accordingly, he specifically credited Dr. Elamashat's testimony instead. (R. 25-27.) Second, Dr.

Gerber's testimony does not relate to Plaintiff's impairment and so does not provide evidence as to whether the impairment was "severe." Dr. Gerber stated generally that psychological factors can impact cardiac conditions. (R. 77.) Dr. Gerber also specifically stated that his opinion was not addressing non-physical impairments. (R. 69.) Accordingly, the ALJ's decision with respect to Plaintiff's mental impairments is supported by substantial evidence.

### B. The ALJ's RFC Determination Is Supported By Substantial Evidence.

When determining Plaintiff's RFC the ALJ found that Plaintiff could "lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 6 hours out of an 8-hour day; sit for 6 hours out of an 8-hour day; and is precluded from above the shoulder reaching with the right upper extremity." Id. Based on this RFC, the Court found that Plaintiff could perform his past relevant work as a dispatcher and was therefore not disabled under the SSA. (R. 27.)

Plaintiff contends that the ALJ erred in its determination of Plaintiff's RFC by (1) not following the treating physician rule and (2) not properly crediting Plaintiff's testimony at the first oral hearing. (Pl. Br. 11-14, 17-21.) The Court addresses each in turn.

#### 1. The Treating Physician Rule

Plaintiff sets forth two arguments for why the ALJ failed to follow the treating physician rule, which governs how a treating physician's opinion must be evaluated. First, he argues that the ALJ erred by not identifying substantial non-opinion evidence contradicting Dr. Inguaggiato's opinion, and so Dr. Inguaggiato's opinion should control. (Pl. Br. 13.) Second, he argues that the ALJ erred by not evaluating Dr. Inguaggiato's opinion according to the factors set forth in 20 CFR §§ 404.1527 and 416.927. (Pl. Br. 13-14.) Neither argument is convincing.

### a) The ALJ Properly Found That Dr. Inguaggiato's Opinion Is Not Controlling

A treating physician's opinion is given controlling weight when it is (1) "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the claimant's] case record." Johnson v. Comm'r Soc. Sec., 529 F.3d 198, 202 (3d Cir. 2008) (quoting 20 C.F.R. § 404.1527); see also 20 C.F.R. § 416.927 (stating the same legal standard). Plaintiff contends that the ALJ failed to identify substantial evidence contradicting Dr. Inguaggiato's opinion, and therefore Dr. Inguaggiato's opinion should be given controlling weight. (Pl. Br. 13.) Defendant argues that the ALJ specifically cited substantial evidence contradicting Dr. Inguaggiato's opinion, including Dr. Inguaggiato's own treatment notes. (Def. Br. 10.) The Court agrees. The ALJ specifically credited Dr. Gerber's interpretation of the underlying medical evidence from a variety of treating sources, including sources indicating improvements in the ejection fraction. (R. 26, 70.) The ALJ further relied upon Dr. Inguaggiato's own notes indicating a classification of "NYHA II" which Dr. Gerber testified was compatible with the ability to perform light exertion work. (R. 26.)

In weighing this contradictory evidence, the ALJ also determined that Dr. Inguaggiato's handwritten calculations were unreliable, based on medical expert testimony. (R. 26-27.)[5] This finding is supported by the Record. In discounting test results, the ALJ cannot simply ignore

---

[5] The ALJ did not have a duty to recontact Dr. Inguaggiato for clarification of his methods. An ALJ is only required to recontact a medical source when the information gathered from that source is inadequate for the determination of disability. Johnson, 529 F.3d at 205. The ALJ did not base his credibility determination of Dr. Inguaggiato solely on the reliability of Dr. Inguaggiato's readings, but also upon inconsistencies in Dr. Inguaggiato's diagnosis, as discussed elsewhere in this opinion. (R. 24.) Accordingly, the ALJ had adequate information to determine disability. See Johnson, 529 F.3d at 205. (holding that the rejection of a doctor's testimony does not trigger a duty to recontact).

results or dismiss them as "inconsistent." Johnson v. Barnhart, 66 F.App'x 285, 288 (3d Cir. 2003). If the ALJ does decide to credit certain test results while ignoring others, it "must explain a decision to credit some test results while not crediting others." Id. The ALJ's decision meets this standard. At the second oral hearing Dr. Gerber testified extensively as to the accuracy and reliability of Dr. Inguaggiato's handwritten ejection fraction reading. (R. 71-76.) Dr. Gerber testified that the handwritten reading was "not terribly sophisticated or reliable," in contrast to the other computer-automated readings in the Record. (R. 72-73.) Dr. Gerber also noted that Dr. Inguaggiato's diagnoses from June to August 2011 are inconsistent. For example, he noted that on June 24, 2011 Dr. Inguaggiato diagnosed Plaintiff with Class "II/III" congestive heart failure and an ejection fraction of 25% (R. 705), but weeks later on August 2, 2011 and August 8, 2011 diagnosed Plaintiff with Class "II" congestive heart failure (R. 717) and a ~30% ejection fraction (R. 721), respectively. (R. 72-74.) The ALJ properly and specifically relied on this inconsistency. (R. 26.) That the ALJ here considered Dr. Inguaggiato's findings but found them to be inconsistent renders the decision distinct from those cases cited by Plaintiff. Brownawell v. Comm'r Soc. Sec., 554 F.3d 352, 356-357 (3d Cir. 2008) (the ALJ "ignored" opinions of treating physicians, and rejected one opinion "in large part on evidence that does not exist"); Dorf v. Boehn, 794 F.2d 896, 902 (3d Cir. 1986) (the ALJ "improperly ignored" clinical findings of the treating physician).

Accordingly, due at least to the found inconsistency between Dr. Inguaggiato and the Record, the ALJ properly found that Dr. Inguaggiato's opinions were not controlling pursuant to 20 C.F.R. §§ 404.1527, 416.927.

### b)      The ALJ Properly Considered the Relevant Factors In Weighing Dr. Inguaggiato's Opinion

If not given controlling weight, the ALJ must determine the weight given to the treating physician's opinion based on the following factors: length of treatment relationship and frequency of exam; nature and extent of treatment relationship; supportability; consistency; specialization; and other relevant factors brought to the ALJ's attention. 20 C.F.R. §§ 404.1527, 416.927; See Fargnoli v. Massanari, 247 F.3d 34, 42-44 (3d Cir. 2001) (remanding the ALJ's decision for failure to explain the weight given to evidence from claimant's treating physicians). The ALJ properly considered these factors.

An essential element of an ALJ determination on evidence is to provide reasons for its decision. When there is a conflict between medical sources, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer v. Apfel 186 F.3d 422, 429 (3d Cir. 1999) (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

In regards to weighing a non-treating source over a treating source, an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Id. (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)).

The ALJ's decision to not accord Dr. Inguaggiato's opinions "significant weight" was supported. Unlike Fargnoli, where the ALJ failed to articulate or explain its assessment of the treating physicians' records, the ALJ here provided thorough analysis. 247 F.3d at 43-44. As set forth in the preceding section, the ALJ's determination was based primarily on the variety of contradictory medical evidence weighing against Dr. Inguaggiato's outlying views. The ALJ

noted that Dr. Inguaggiato's views were inconsistent with his own treatment notes. (R. 26 (noting that "NYHA II" was inconsistent with Dr. Inguaggiato's ultimate opinion); R. 27 (noting that Dr. Inguaggiato's "fair" cardiology prognosis was inconsistent with Dr. Inguaggiato's ultimate conclusion)). Additionally, the ALJ recognized the treating relationship between Dr. Inguaggiato and Plaintiff (R. 26), and that Dr. Inguaggiato was a cardiologist. (R. 27.) Accordingly, the ALJ properly weighed the factors, and his decision is supported by substantial evidence.

        C.       **The ALJ Properly Evaluated Plaintiff's Credibility**

Plaintiff's final contention is that the ALJ failed to properly credit Plaintiff's testimony. (Pl. Br. 17-21.) Plaintiff objects to the ALJ's finding that his alleged symptoms are "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 26.) In particular, Plaintiff alleges that the ALJ did not consider the factors enumerated in SSR 96-7p when evaluating Plaintiff's testimony regarding his chest pain, shortness of breath, fatigue, stress, and memory loss. (Pl. Br. 21, 9-10.)

In evaluating a claimant's testimony regarding symptoms and pain, an ALJ must first determine whether there is a medically determinable impairment that could reasonably be expected to produce the alleged pain or symptoms. 20 C.F.R. §§ 404.1529, 416.929. When impairment is found, the ALJ must evaluate a claimant's subjective statements in relation to the objective evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); See Holley v. Colvin, 975 F. Supp. 2d 467, 479-80 (D.N.J. 2013) ("[T]here must be objective evidence of a condition that could cause the pain alleged."). When performing this evaluation, the ALJ must asses (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms;

(4) medications, treatments, or other measures the claimant takes to alleviate the symptoms; and (5) any other relevant factors. SSR 96-7p. The ALJ properly conducted this analysis.

The ALJ specifically discussed Plaintiff's testimony with respect to his daily activities and symptoms, and considered factors such as exertion that aggravate the symptoms. (R. 26.) The ALJ then noted the treatment that Plaintiff had received for these symptoms. (Id.) However, the ALJ properly relied on Dr. Gerber's expert testimony and found that Plaintiff was not credible. In particular, the ALJ credited Dr. Gerber that the objective physical factors of the entire Record "would not support sustained symptoms of extreme fatigue and pain, secondary to stress, as alleged by claimant" (Id.); (R. 72.) This determination is supported by Dr. Inguaggiato's own notes regarding Plaintiff's physical condition, as previously discussed, as well as the opinions of Dr. Tamayo regarding Plaintiff's physical condition (finding Plaintiff "able to stand and walk 6 hours out of an 8-hour workday with normal breaks" (R. 597)) and Dr. Elamashat regarding Plaintiff's mental conditions (finding Plaintiff "[a]ble to adapt to stresses common to a normal work environment" and "[a]ble to maintain concentration and attention, persistence and pace" (R. 605)). (R. 27.) The ALJ thus comported with the applicable standards in determining the credibility of Plaintiff's testimony as to his symptoms and pain.

**V.     CONCLUSION**

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed. An appropriate order accompanies this Opinion.

DATED: June 25, 2014                             */s/ Claire C. Cecchi*
                                                                  **CLAIRE C. CECCHI, U.S.D.J.**